UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MEHRAN POURDEHGHAN, | ) | NO. 2:15-cv-07975 (KS) |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) | |
| Defendants. | ) | |
| _____ | ) | |

**INTRODUCTION**

Plaintiff filed a Complaint on October 9, 2015, seeking review of the denial of his application for supplemental social security income ("SSI"). (Dkt. No. 1.) On January 4, 2016, Defendant filed an answer to the Complaint. (Dkt. No. 15.) On March 15, 2016, the parties filed a Joint Stipulation ("Joint Stip.") in which plaintiff seeks an order reversing the Commissioner's decision and ordering payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. 15.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See id.* 16.) On November 9, and 17, 2015, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed

1

before the undersigned United States Magistrate Judge. (Dkt. Nos.11, 13, 14.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On November 3, 2009, plaintiff, who was born on March 21, 1969, filed an application for SSI.[1] (*See* Administrative Record ("A.R.") 317.) Plaintiff alleged disability commencing March 1, 2007. (*Id.* 79.) The claim was denied initially on March 17, 2010 and upon reconsideration on July 30, 2010. (*Id.* at 75.) On August 25, 2010, plaintiff filed a written request for a hearing and on October 6, 2011, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Chris L. Gavras ("ALJ Gavras"). (*Id.*) A vocational expert ("VE") also appeared and testified at the hearing. (*Id.*) Plaintiff testified at the hearing with the assistance of a Farsi interpreter and was represented by counsel. (*Id.*) November 9, 2011, ALJ Gavras denied SSI finding plaintiff has not been under a disability within the meaning of the Social Security Act since the date his application was filed. (*Id.* 79.) Plaintiff appealed the denial and on May 23, 2013, the Appeals Council vacated the hearing decision and remanded the case to an ALJ for further proceedings. (*Id.* 94.)

Specifically, the Appeals Council found that the record did not support ALJ Gavras's finding that plaintiff was capable of performing his "past relevant" work as an accountant, as it is generally performed in the national economy. (*Id.* 94.) First, the Appeals Council noted that the record did "not clearly indicate that the [plaintiff's] work as an accountant was performed at substantial gainful activity levels." (*Id.*) In addition, "the record contains no evidence regarding the nature of the [plaintiff's] duties as an accountant as he actually performed this job in a fabric store in Iran sufficient to allow an adequate evaluation of

---

[1] Plaintiff was 40 years old on the date his application was first filed and thus met the agency's definition of a "younger person." *See* 20 C.F.R. § 404.1563(c), 416.963(c). At the time of the hearing before ALJ Gunn on January 14, 2014, plaintiff was 44 years and 9 months old. (See Joint Stip. 5.)

whether it was equivalent to the same occupation performed in the United States and that was cited by the vocational expert at the hearing." Consequently, the Appeals Council concluded that "[f]urther development of the record and evaluation is necessary at step four of the sequential evaluation pursuant to 20 CFR 416.960, 416.965, and 416.974 and Social Security Rulings 82-40 and 82-62." (*Id*.)

On remand, plaintiff appeared and testified at a hearing before ALJ Evelyn M. Gunn ("ALJ Gunn") on January 14, 2014. (A.R. 31-49.) Plaintiff again testified at the hearing with the assistance of a Farsi interpreter. (*Id.* at 31.) Also appearing and testifying was impartial VE Gregory Jones. *(Id*. 42-48.) Medical expert Stephen R. Kaplan, M.D. was present at the hearing but did not testify. (*Id*. 33.) On February 24, 2014, ALJ Gunn issued an unfavorable decision. (*Id.* 14-23.) On March 10, 2014. Plaintiff filed a written request for review of ALJ Gunn's decision. (*Id.* 13.) On August 18, 2015, the Appeals Council denied plaintiff's request for review. (*Id.* 1.) This timely action followed.

## SUMMARY OF ADMINISTRATIVE DECISION

ALJ Gunn applied the five-step evaluation process and found at step one that plaintiff had not engaged insubstantial gainful activity since November 3, 2009, the application date. (A.R. 20.) At step two, the ALJ found that plaintiff had the following severe impairments: "diabetes mellitus; lupus; and fibromayalgia." (*Id*.)[2] The ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§

---

[2] On remand to reconsider the prior ALJ's determination at step four that plaintiff remained capable of performing "past relevant" work as an accountant, ALJ Gunn received "some updated medical treatment records" for plaintiff, but noted that "these records do not demonstrate a significant change in [plaintiff's] medical condition(s) indicating any additional or greater impairment-related limitations since the previous ALJ's decision" (A.R. 18.) Thus, while ALJ Gunn reached a new conclusion about plaintiff's past relevant work, he "made no new and different findings regarding [plaintiff's] medical condition(s)." (*Id*.)

3

416.920(d), 416.925, 416.926). (*Id.*) The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work as follows:

> Lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently, and sitting up to 6 out of 8 hours, except he can stand and/or walk only 2 hours over the course of an 8-hour workday, and he has the following additional (non-exertional) restrictions; no climbing on ladders, ropes, or scaffolds; no more than frequent bending, stopping, kneeling, crouching, crawling, or climbing on ramps/stairs; no more than frequent use of the bilateral upper extremities for grasping, gripping, handling, or fingering objects, no concentrated exposure to fumes, odors, dusts, gases, or other pulmonary irritants; and no concentrated exposure to unprotected heights or hazardous machinery.

(*Id.*)

At the hearing before ALJ Gunn, plaintiff testified that the translation of his prior work in Iran as that of an "accountant" was wrong. (A.R. 36.) Plaintiff clarified that "All I was doing was if they received any fabric, and I would say we received one package of fabric. You don't call it accounting, I was just receiving fabric." (*Id.*) Based on this testimony, the ALJ found that plaintiff was unable to perform his past relevant work as a "receiving checker" (DOT 222.687-018), which the VE testified is the occupation that most closely matches the work that plaintiff performed for ten years in Iran of receiving and shelving in a fabric store. (*Id.* 21.) The ALJ also found that plaintiff has "a limited education and is able to communicate in English." (*Id.*) To determine whether plaintiff could make a successful adjustment to other work, the ALJ considered plaintiff's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2, and concluded, with the assistance of

the VE, that plaintiff was capable of performing "sedentary unskilled (SVP 2) occupations" that exist in significant numbers in the national economy, such as addressing clerk (DOT 209.587-010), table worker (DOT 739.687-182) and bench hand (DOT 700.687-062). (*Id.* 22.) Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act from the alleged onset date through the date of the ALJ's decision. (*Id.* 23.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff alleges the following error: the ALJ erred at step 5 of the sequential analysis in finding that plaintiff is literate in English. (Joint Stip. 5.) Plaintiff argues that because the ALJ determined that he was limited to sedentary work, if plaintiff is illiterate "he is disabled as of his 45th birthday and, applying the borderline age situation, a finding of disabled must issue." (*Id.*) [3]

\\
\\
\\
\\

---

[3] Although plaintiff raises the ALJ's literacy determination as the only disputed issue, he also argues that because plaintiff was approaching his 45th birthday at the time of the second hearing, this presented a borderline age situation where the ALJ was required to consider the higher age category. (Joint Stip. 5, fn. 1.) There is no bright line test for how close a claimant's next birthday must be to qualify as a "borderline age situation." The Commissioner's regulations provide that a borderline situation exists if a claimant is "within a few days to a few months of reaching an older age category" and using the older age category would result in a determination or decision that [the claimant is] disabled." 20 C.F.R. §§ 404.1563(b), 416.963(b). Courts "have held that a person within six months of the next higher age category is considered 'borderline.'" *Lewis v. Comm'r of Soc. Sec.,* 666 F.Supp.2d 730, 738 (E.D. Mich. 2009) (*citing Pickard v. Comm'r of Soc. Sec*, 224 F.Supp.2d 161, 1168 (W.D. Tenn. 2002) (collecting cases); *see also Jenkins v. Astrue*, 628 F.Supp.2d 1140, 1143 (C.D. Cal. 2009) (borderline situation existed where claimant was within six months of reaching age 55 on date his insured status expired). Here, plaintiff was three months away from his 45th birthday when he appeared at the administrative hearing on January 24, 2014.

**I.  The Standard**

In the five-step sequential analysis, after a claimant establishes that a severe impairment prevents him from performing his past work, at the fifth step, "the burden shifts to the [Commissioner] to show that the claimant can perform other substantial gainful work that exists in the national economy." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir.1989); *see also Smolen v. Chater,* 80 F.3d 1273, 1291 (9th Cir. 1996).  In making this determination, the ALJ follows the medical-vocational guidelines, which include tables of "grid-rules" that indicate the appropriate disability determinations for claimants with various combinations of RFC, age, education, and past work history. *See* 20 C.F.R. pt. 404, subpt. P, app. 2; 20 C.F.R. § 416.969 (incorporating 20 C.F.R. pt. 404, subpt. P, app. 2 into SSI regulations); *see also Heckler v. Campbell,* 461 U.S. 458 (1983) (upholding validity of guidelines).  If, as here, a plaintiff "suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." *Lounsburry v. Barnhart,* 468 F.3d 1111, 1115 (9th Cir.2006).  "[W]here application of the grids directs a finding of disability, that finding must be accepted by the Secretary." *Cooper v. Sullivan,* 880 F.2d 1152, 1157 (9th Cir.1989).

Under the guidelines, a person aged 18 through 49 is considered a "younger individual." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(1).  The guidelines further provide that

> For individuals who are under age 45, age is a more advantageous factor for making an adjustment to other work. It is usually not a significant factor in limiting such individuals' ability to make an adjustment to other work, including an adjustment to unskilled sedentary work, even when the individuals are unable to communicate in English or are illiterate in English.

20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201(h)(2). However, for persons aged 45-49 who: (i) are restricted to sedentary work, (ii) are unskilled or have no transferable skills, (iii) can no longer perform past relevant work; and (iv) are unable to communicate in English, or are unable to speak and understand English but are unable to read or write English, a finding of "disabled" is warranted under the guidelines. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201(h)(1).

Literacy is a vocational factor relevant to the ALJ's inquiry at step five. *Silveira v. Apfel*, 204 F.3d 1257, 1261-62, n. 14 (9th Cir. 2000). A younger individual age who is limited to sedentary work and illiterate or unable to communicate in English with previous work experience that is unskilled or none is deemed disabled. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, table 1, Rule 201.17. A person 45-49 years old who is limited to sedentary work, has a limited education or less, but is at least literate and able to communicate in English, and has an unskilled work history is not disabled. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, table 1, Rule 201.18.

Social Security regulations define illiteracy as "the inability to read or write." 20 C.F.R. § 416.964(b)(1). A person who "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name" is considered illiterate. (*Id.*)

Finally, because literacy is relevant to the ALJ ability to meet its burden to show that a clamant can perform other work existing in the national economy, the Commissioner bears the burden of establishing that a claimant is literate. *Silveira,* 204 F.3d at 1261-62, n.14.

\\
\\
\\
\\

## II. Plaintiff Has Not Waived The Right To Challenge the ALJ's Step-Five Determination.

Defendant contends that to the extent plaintiff challenges the VE's testimony regarding the determination of substantial gainful activity and the classification of his past relevant work in Iran, plaintiff has waived that argument by failing to object or present evidence at the administrative hearing. (Joint Stip. 8.) In arguing waiver, defendant relies on *Meanel v. Apfel*, 172 F.3d 111,1115 (9th Cir. 1999). (*See* Joint Stip. 8-9.) However, *Meanel*, is inapposite here. In that case, the claimant attempted to challenge a VE's testimony as to the number of jobs in the local area by using statistics that "she admittedly failed to raise at both her hearing before the ALJ and the Appeals Council." (*Id.*) Here, by contrast, plaintiff is not seeking to introduce new record evidence to challenge the VE's testimony, nor does he challenge the VE's characterization of plaintiff's past work in Iran as substantial gainful activity. Rather, plaintiff disputes ALJ Gunn's step-five determination based on the *existing* record (or lack thereof) concerning plaintiff's English literacy and challenges whether the ALJ's application of the grid guidelines was without legal error. (Joint Stip. 5-7.) The Court, therefore, concludes that plaintiff has not waived his right to challenge the ALJ's determination on this issue.

Defendant next argues that substantial evidence supports ALJ Gunn's finding that plaintiff has sufficient proficiency in English to perform work in the national economy. (*Id.* 11.) For the reasons discussed below, the Court finds the ALJ's conclusion regarding plaintiff's ability to "communicate effectively in English" is not supported by substantial evidence in the record.

\\
\\
\\
\\

### III. The ALJ's Determination That Plaintiff Can Effectively Communicate In English Is Not Supported By Substantial Evidence.

ALJ Gunn noted that if plaintiff had an RFC to perform "the full range of light work, a finding of "not disabled" would be dictated by Medical-Vocational Rule 202.18. (*Id*.) However, because plaintiff had other limitations that impeded his ability to perform work at this level, ALJ Gunn accepted the VE testimony that plaintiff's RFC is consistent "with a significantly reduced range of light work and essentially the full range of sedentary work." (A.R. 22.) The ALJ then found that plaintiff has a limited education and "is able to effectively communicate in English." (*Id.*)

The ALJ based his conclusion about plaintiff's ability to communicate in English on two facts. First, he noted that plaintiff "took and passed the citizenship test in English." (A.R. 21, 44 (hearing transcript).) Second, the ALJ Gunn noted that based on his review of the medical record, plaintiff "has managed to communicate effectively in English when seen in the treatment context." (A.R. 22.) The ALJ acknowledged that "some of the records do reference some language limitations at one point or another," but he observed that "that most if not all of the [plaintiff's] treating physicians have been able to discuss his medical issues with him in English, without any indication of the need for interpretation." (*Id*.) The ALJ's reasons for concluding plaintiff can "effectively communicate" in English are not supported by substantial evidence in the record.

The ability to take and pass the U.S. citizenship examination is not dispositive on the issue of plaintiff's literacy for purposes of performing other work existing in the national economy. *See Voong v. Astrue*, 641 F.Supp.2d 996, 1008 (E.D. Cal. 2009 ("the court agrees that [claimant's] passing of [citizenship test and driver's license test] did not demonstrate that she was being untruthful regarding her English speaking skills."); *but compare*, *Ramos v. Astrue*, No. CV 09-1644-OP, 2009 WL 4907048 (C.D. Cal. Dec. 11, 2009) (ALJ

discounted claimant's credibility regarding alleged illiteracy in English where claimant had been in the U.S for 32 years, was a U.S. citizen and passed the citizenship test in English).[4] Second, as plaintiff points out, it is unclear from the record whether plaintiff had any assistance from relatives or others when communicating with his medical providers. (*See* Joint Stip. 7.) ALJ never asked if plaintiff filled out the disability related forms by himself or with anyone else's assistance. Indeed, the record includes evidence that in May and August 2009, in consecutive consultations with Dr. Simac, plaintiff indicated that he was trying to qualify as a nurse, but was unable pass his exams "due to language difficulties." (*See* A.R. 469, 471; Ex. 8F/6, 8.)

Defendant argues that other record evidence supports the ALJ's finding regarding plaintiff's ability to communicate in English, such as letters submitted to the agency and purportedly "reflect proficient English writing skills." (*See* A.R. 354-57, 375). However, in his decision, ALJ Gunn did not cite any of these documents as supporting his finding and the Court cannot affirm the decision on ground upon which the ALJ did not rely. *Orn*, 495 F.3d at 630. Furthermore, one of the documents has handwritten entries (A.R. 354-57), while the other is a typewritten but unsigned letter (A.R. 375). There is nothing in the record to indicate whether plaintiff had assistance in preparing either or both of these documents or whether someone else, such as his wife or daughter, may have prepared them on his behalf.[5]

At both hearings on his claim, plaintiff testified with the assistance of a Farsi interpreter. (A.R. 31 (Jan. 24, 2014), 52 (Oct. 6, 2011).) Plaintiff indicated he had worked at Subway as a sandwich maker in 2006-2007. (A.R. 341.) There is no evidence in the record, however, that plaintiff can write simple messages such as instructions or inventory lists, as required under the Commissioner's regulations for a finding of literacy. 20 C.F.R. §

---

[4] Here, unlike the claimant in *Ramos*, at the time of his SSI application, plaintiff had been in the U.S. only four years since his arrival from Iran in 2005. (*See* A.R. 55.)

[5] Plaintiff testified that he has a daughter in the 10th grade. (A.R. 56.)

416.964(b)(1). In fact, when asked if he did "any writing, complete reports, or perform duties like this?" while at Subway, plaintiff answered "No." (A.R. 341.) Beyond this statement and the fact the plaintiff passed the citizenship examination, the record is silent on the issue of plaintiff's ability to read or write in English. Accordingly, substantial evidence does not support the ALJ's determination that plaintiff can "communicate effectively in English."

### IV. The ALJ's Error Is Not Harmless.

Even when an ALJ errs, because the scope of judicial review of the Social Security determinations is quite limited, the Court will uphold the agency's decision if such errors are harmless. An error is "harmless" if "it is inconsequential to the ultimate nondisability determination." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (internal citation omitted). However, the Ninth Circuit has emphasized that "our precedents have been cautious about when harmless error should be found, even though the analytical framework itself applied broadly." *Marsh*, 792 F.3d at 1173. Here, the ALJ's error in failing to identify substantial record evidence to support his conclusion that plaintiff is literate in English, is highly consequential to the ultimate decision of nondisability and cannot, therefore, be harmless.

### V. Remand is Appropriate.

When the Commissioner's decision is not supported by substantial evidence, the Court may either remand the matter for further administrative proceedings or reverse and order benefits granted. In certain narrow circumstances, courts may credit evidence as "true" and award benefits based on that evidence if it finds that the agency did not properly evaluate that evidence in the first instance. *Treichler*, 775 F.3d at 1099-1102. However, the Ninth Circuit has emphasized that "[a] remand for an immediate award of benefits is appropriate only in rare circumstances." *Brown-Hunter*, 806 F.3d at 495. Before ordering

12

this extreme remedy, the Court must find: (1) that the "ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion" (*id. citing Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)); (2) that "the record has been fully developed and further administrative proceedings would serve no useful purpose (*id.*); and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." (*Id*.)

A remand for further proceedings is appropriate when "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison,* 759 F.3d at 2012. "Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may well prove enlightening in light of the passage of time." *Id*. at 1101 (internal quotation marks, citations, brackets, and ellipsis omitted).

Here, the record has not been sufficiently developed regarding plaintiff's literacy in English. *See, e.g., Payan v. Chater*, 959 F. Supp. 1197, 1205 (C.D. Cal. 1996) (remand appropriate if record is incomplete and additional evidence could complete the record). As the records stands, there is no basis for determining whether plaintiff can meet the language requirements of the jobs identified by the VE, nor can this Court engage in a meaningful judicial review of the ALJ's finding at step five.

Because the Court finds that the record does not support a finding one way or the other with regard to plaintiff's literacy, the Court will remand this matter for further proceedings. The ALJ is directed to further develop the record, including receiving any additional evidence that may be necessary to properly evaluate whether plaintiff can communicate effectively in English for purposes of performing the alternative work the VE identified as existing in the national economy consistent with the ALJ's RFC determination.

In light of the remand, the Court declines to reach plaintiff's argument that the ALJ erred by failing to find plaintiff disabled based on the border line age situation. However, on remand, the ALJ has a duty to conduct the appropriate inquiry.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 29, 2016

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE